1  David A. Van Riper (California Bar No. 128059)
   dave@vanriperlaw.com
2  **VAN RIPER LAW**
3  1254 Irvine Blvd., Suite 200
   Tustin, California 92780-3571
4  Telephone: (714) 731-1800
5  Facsimile: (714) 731-1811

6  Stephen M. Ferguson (*pro hac vice* to be filed)
7  stephen.ferguson@hnbllc.com
   **HAGAN NOLL & BOYLE LLC**
8  820 Gessner, Suite 940
9  Houston, Texas 77024
   Telephone: (713) 343-0478
10 Facsimile: (713) 758-0146

11 Attorneys for Plaintiffs DISH Network L.L.C.
12 and Sling TV L.L.C.

13

14        **UNITED STATES DISTRICT COURT**
          **CENTRAL DISTRICT OF CALIFORNIA**
15               **WESTERN DIVISION**

16

17 DISH NETWORK L.L.C. and          **Case No.**
   SLING TV L.L.C.,
18                                  **PLAINTIFFS' COMPLAINT FOR:**
              Plaintiffs,
19                                      1) **Violation of the Digital Millennium**
      v.                                   **Copyright Act, 17 U.S.C. § 1201(a)(2);**
20
   STRONGTIMES                           2) **Violation of the Digital Millennium**
21 INTERNATIONAL LIMITED and               **Copyright Act, 17 U.S.C. § 1201(b)(1);**
   LIU ZIHONG,
22                                       3) **Violation of the Electronic**
              Defendants.                  **Communications Privacy Act,**
23                                         **18 U.S.C. §§ 2511(1)(c), (d)**

24                                  **ACTION SEEKING STATEWIDE OR**
                                    **NATIONWIDE RELIEF**
25

26

27

28

Plaintiffs DISH Network L.L.C. and Sling TV L.L.C. file this action against Defendants Strongtimes International Limited and Liu Zihong, for violations of the anti-trafficking provisions of the Digital Millennium Copyright Act ("DMCA") and the Electronic Communications Privacy Act ("ECPA"). Defendants provide and profit from the sale of illicit streaming services that capture and retransmit Plaintiffs' copyrighted television programming, without authorization, by circumventing Plaintiffs' security measures (the "Services").

## PARTIES

1.      Plaintiff DISH Network L.L.C. ("DISH") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

2.      Plaintiff Sling TV L.L.C. ("Sling") is a Colorado limited liability company having its principal place of business in Englewood, Colorado.

3.      Defendant Strongtimes International Limited ("Strongtimes") is a Hong Kong private company, registration number 62269438, having its principal place of business in Sheung Wan, Hong Kong.

4.      Defendant Liu Zihong ("Zihong") is an individual believed to be residing in Shenzhen, China. Zihong is the sole founder, owner, and director of Strongtimes and as such had the right and ability to, and on information and belief did in fact, authorize, direct, or participate in, and receive direct financial benefits from, the infringing activities of Strongtimes alleged herein.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims for violations of the DMCA, 17 U.S.C. § 1201 and the ECPA, 18 U.S.C. § 2511.

6.      Strongtimes is subject to personal jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) because it contracted with California corporation WIN.IT America, Inc. ("WIN.IT") for inventory management and order fulfillment services related to its sale of the Services throughout California and the United States.

Strongtimes used WIN.IT to ship 3,684 Services to addresses in the United States, with 671 of those Services to  addresses in California. Strongtimes through its wrongful conduct identified herein, purposefully directed its conduct towards and purposefully availed itself of the privileges of conducting business in California, causing injury to Plaintiffs in California.

7.    The Court, alternatively, has personal jurisdiction over Strongtimes pursuant to Federal Rule of Civil Procedure 4(k)(2), to the extent there is an insufficient basis to exercise personal jurisdiction in California under Rule 4(k)(1)(A). In addition to contracting with California corporation WIN.IT for shipping the Services throughout the United States, Strongtimes has sold 3,684 Services to consumers located in the United States.  Plaintiffs were harmed in the United States because these consumers avoided paying subscription fees to Plaintiffs and Plaintiffs' copyrights held only for the United States were infringed throughout the United States.

8.    The Court has personal jurisdiction over Zihong pursuant to Rule 4(k)(1)(A), or alternatively Rule 4(k)(2), because Zihong is a primary participant in Strongtimes' violations of the DMCA and ECPA or had control of and at least direct participation in such activities. Zihong is the sole founder, owner, and director of Strongtimes. Zihong was personally notified of his violations of the DMCA and ECPA and asked to cease and desist from selling, operating, participating in, or supporting the Services, but the Services have continued to operate. Zihong financially benefitted from the violations as the sole founder, owner, and director of Strongtimes.

9.    The Court's exercise of personal jurisdiction over Strongtimes and Zihong, whether pursuant to Rule 4(k)(1)(A) or 4(k)(2), is reasonable and consistent with the United States Constitution and United States law because their purposeful interjection into California and the United States is substantial, the burden of them having to defend in this Court is minimal, and this Court is the most appropriate

**PLAINTIFFS' COMPLAINT**

1   forum to decide this case. Strongtimes is an established company that is believed to
2   generate hundreds of thousands of dollars in revenues annually. The United States
3   has an interest in having its laws enforced in its federal courts, while Plaintiffs have
4   an interest in protecting itself in a United States federal court, perhaps the only forum
5   where DISH can enforce its rights under the DMCA and ECPA for violations that
6   occurred in the United States.

7        10.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a
8   substantial part of the events giving rise to Plaintiffs' claims occurred in this district;
9   under § 1391(b)(3) because Strongtimes and Zihong are each subject to personal
10  jurisdiction in this district; and under § 1391(c)(3) because as nonresidents of the
11  United States they may be sued in any district.

12  **DEFENDANTS' REBROADCASTING SCHEME**

13       11.    Plaintiffs provide television programming to millions of authorized, fee-
14  paying subscribers of their Sling TV and DISH Anywhere services in the United
15  States using the internet. Plaintiffs acquire the distribution rights to provide the
16  programming pursuant to license agreements between DISH and various rights
17  holders. The programming consists of live channels and on demand content and is
18  subject to copyright protections. Plaintiffs' live channels, whether intended for Sling
19  TV subscribers or DISH Anywhere subscribers, are transmitted over the internet using
20  the same Sling streaming platform ("Channels").

21       12.    Plaintiffs implement digital rights management ("DRM") technology,
22  with the rights holders' consent, to protect the Channels from unauthorized access,
23  copying and retransmission. Each DRM technology uses a key-based subscriber
24  authentication and encryption-decryption process to make the Channels accessible to
25  only authorized subscribers that purchase access to the Channels from Plaintiffs and
26  restricts unauthorized access to, copying, and retransmission of the Channels.

27       13.    Strongtimes is trafficking in the Services that are accessed using the
28  Tanggula set-top boxes, through its website located at https://tanggulatvbox.com

**PLAINTIFFS' COMPLAINT**

1    ("Website").    Strongtimes    previously    trafficked    in    the    Services    through    its
2    TechnoElectros.com domain and website.

3        14.    Strongtimes    advertises    the    Services    on    its    Website    claiming    the
4    "Tanggula IPTV Box is the Ultimate Fully Loaded Android streaming device" with
5    "11,000+    Live    TV    Channels    Worldwide."    Strongtimes'    advertising    places    an
6    emphasis on converting users from legitimate subscription-based television services
7    such as those provided by Plaintiffs, stating consumers can cut the chord and "Watch
8    premium TV without the burden of monthly or yearly fees," and "you can confidently
9    become a true Cable Cutter and bid farewell to those expensive cable bills."



20        15.    Strongtimes also uses the Website to promote the Services as being apps
21    on    the    Tanggula    set-top    box    that    have    "all    contents    free,"    "NO    ANY
22    SUBSCRIPTION,",    "FREE PPV EVENT,"    and    "Don't miss the NFL UFC NBA
23    NHL NCAAF MLB PPV," with PPV meaning pay-per-view.

5



16.     Strongtimes targets consumers in the United States as shown by statements on the Website that the Tanggula set-top boxes "Ship from USA" and a claim that use of the Services "does not violate U.S. . . . copyright law."

 





17.     Strongtimes sells the Services for a one-time cost of approximately $189.00, $299.00, or $329.00 depending on the Tanggula set-top box purchased. The Website emphasizes that after the initial payment there are no "monthly or yearly

PLAINTIFFS' COMPLAINT

fees" and "all content is free" (unlike legitimate pay-television services such as the services provided by Plaintiffs that charge a monthly subscription fee).

18.    Plaintiffs' investigator purchased several Tanggula set-top boxes through the Website.  Strongtimes shipped the Tanggula set-top boxes to Plaintiffs' investigator through WIN.IT.

19.    Plaintiffs received the Tanggula set-top boxes, tested them, and confirmed that the Services intercepted and transmitted Plaintiffs' Channels without authorization.

20.    Identifiers that are unique to Plaintiffs' internet transmissions of the Channels were detected when conducting a technical analysis of the corresponding channels on the Services, thereby confirming that channels transmitted on the Services originated from Plaintiffs.  Monitoring conducted on a sampling of channels on the Services showed numerous instances where Plaintiffs' Channels were being retransmitted to users of the Services without Plaintiffs' authorization.  Plaintiffs' internet transmissions of the Plaintiffs' Channels on the Services include the following by way of example: AMC Thrillers, Big Ten Network, Bon Appetit, Comedy Dynamics, Electric Now, ESPN, Free Speech TV, HDNet Movies, Maverick Black Cinema, MLB Network, Newsy, NFL Network, Pac-12 Los Angeles, Pac-12 Mountain, Pac-12 Washington, The Design Network, and World Fishing Network.

21.    Plaintiffs' Channels are retransmitted to users of the Services by circumventing the Widevine DRM. The Widevine DRM controls access to Plaintiffs' Channels by requiring Plaintiffs' subscriber to present a valid digital authentication key and license request to Sling's Widevine DRM server to obtain the channel decryption key necessary to unlock a specific Channel. The channel decryption key is provided to Plaintiffs' subscriber in an encrypted communication and upon receipt is not exposed to the subscriber but rather is secured in the content decryption module of the subscriber's Widevine supported device. In addition, the Widevine DRM

**PLAINTIFFS' COMPLAINT**

protects against copying of Plaintiffs' Channels in the ordinary course of its operation by requiring that the encrypted audio-visual segments that make up a Channel are unlocked using the channel decryption key and complied to form the Channel within the confines of the content decryption module, such that Plaintiffs' subscribers can only view the Channel and not retransmit the Channel.

22.    The Widevine DRM and the protection it affords is circumvented using a specially developed computer program that emulates the behavior of a reverse engineered hardware device. The computer program tricks Sling's Widevine DRM server to grant access and provide a channel decryption key by making the server believe the request originated from a legitimate Widevine supported device that would keep the channel decryption key secured (though in reality the request came from the computer program mimicking the reverse engineered hardware). The computer program uses the channel decryption key to unlock the encrypted audio-visual segments that make up the Channel and then compiles the segments to form an unencrypted Channel that is capable of being copied and retransmitted (as opposed to being merely viewed). The unencrypted Channel can be uploaded to a server outside of the Sling platform and retransmitted to any number of users that can receive the Channel without purchasing a legitimate subscription from Plaintiffs.

23.    Upon information and belief, users of the Services are able to receive Plaintiffs' Channels because the Widevine DRM used to protect the Channels from unauthorized access and copying is being circumvented as described above. Additional content provided on the Services is believed to be acquired from other legitimate pay-television providers that use the Widevine DRM through this process of circumvention, which enables the Services to offer thousands of channels and tens of thousands of on-demand programs at a small fraction of the cost charged by legitimate providers that pay to license their content such as Plaintiffs.

24.    Defendants were notified of their violations of the DMCA and ECPA and asked to cease and desist from selling, operating, participating in, or supporting the Services, but the Services have continued to operate.

## CLAIMS FOR RELIEF

## COUNT I

### Violations of the DMCA, 17 U.S.C. § 1201(a)(2)

25.    Plaintiffs repeat and reallege the allegations in paragraphs 1-24.

26.    Plaintiffs use DRM technology to effectively control access to their Channels that include works protected under the Copyright Act.  Plaintiffs are authorized by the copyright owners to control access to the Channels and implement the DRM technology with their consent.

27.    Plaintiffs' DRM technology is circumvented to gain access to Plaintiffs' Channels that are retransmitted without authorization to users of the Services.  Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

28.    The Services, or at least the component or part of the Services that involve gaining unauthorized access to Plaintiffs' Channels, are primarily designed and produced for the purpose of circumventing the DRM technology that Plaintiffs implement and have no commercially significant purpose or use other than circumventing such DRM technology.

29.    Strongtimes violates 17 U.S.C. § 1201(a)(2) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(a)(2).

30.    Zihong authorized, directed, and participated in Strongtimes violations of 17 U.S.C. § 1201(a)(2). Zihong was notified of the violations and asked to cease and desist, but the Services have continued to operate.   Zihong is the sole founder, owner, and director of Strongtimes, and receives direct financial benefits from its violations of 17 U.S.C. § 1201(a)(2). Zihong is a guiding spirit and central figure in

**PLAINTIFFS' COMPLAINT**

Strongtimes' violations of 17 U.S.C. § 1201(a)(2) and therefore Zihong is personally liable for such violations.

31.    The actions of Strongtimes and Zihong violating 17 U.S.C. § 1201(a)(2) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

32.    Defendants' violations of 17 U.S.C. § 1201(a)(2) were willful. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Strongtimes and Zihong will continue to violate 17 U.S.C. § 1201(a)(2).

## COUNT II

### Violations of the DMCA, 17 U.S.C. § 1201(b)(1)

33.    Plaintiffs repeat and reallege the allegations in paragraphs 1-24.

34.    Plaintiffs use DRM technology to effectively control copying of their Channels that include works protected under the Copyright Act.  Plaintiffs are authorized by the copyright owners to control copying of the Channels, including distribution and public performance through acts of retransmission, and implement the DRM technology with their consent.

35.    Plaintiffs' Channels are retransmitted without authorization to users of the Services by circumventing Plaintiffs' DRM technology.  Upon information and belief, the circumvention targets Plaintiffs' Widevine DRM and represents an essential component or part of the Services.

36.    The Services, or at least the component or part of the Services involving unauthorized retransmission of Plaintiffs' Channels to users of the Services, are primarily designed and produced for the purpose of circumventing the protection afforded by the DRM technology that Plaintiffs implement and have no commercially significant purpose or use other than circumventing such protection.

37.    Strongtimes violates 17 U.S.C. § 1201(b)(1) by manufacturing, offering to the public, providing, or otherwise trafficking in the Services.  Each sale of the Services constitutes a separate violation of 17 U.S.C. § 1201(b)(1).

38.    Zihong authorized, directed, and participated in Strongtimes' violations of 17 U.S.C. § 1201(b)(1). Zihong was notified of the violations and asked to cease and desist, but the Services have continued to operate.  Zihong is the sole founder, owner, and director of Strongtimes, and receives direct financial benefits from its violations of 17 U.S.C. § 1201(b)(1). Zihong is a guiding spirit and central figure in Strongtimes violations of 17 U.S.C. § 1201(b)(1) and therefore Zihong is personally liable for such violations.

39.    The actions of Strongtimes and Zihong violating 17 U.S.C. § 1201(b)(1) were performed without the authorization or consent of Plaintiffs or, upon information and belief, any owner of the copyrighted works provided by Plaintiffs.

40.    Defendants' violations of 17 U.S.C. § 1201(b)(1) were willful.  Such violations have damaged Plaintiffs in an amount to be proven at trial.  Unless restrained and enjoined, Strongtimes and Zihong will continue to violate 17 U.S.C. § 1201(b)(1).

## COUNT III

### Violations of the ECPA, 18 U.S.C. §§ 2511(1)(c), (d), and 2520

41.    Plaintiffs repeat and reallege the allegations in paragraphs 1-24.

42.    The Channels retransmitted on the Services are electronic communications intercepted from Plaintiffs for purposes of committing violations of the DMCA, ECPA, and other tortious acts.

43.    Defendants were notified of their violations of the DMCA and ECPA and asked to cease and desist, but the Services have continued to operate.

44.    By continuing to sell or activate the Services, Strongtimes intentionally disclosed or used Plaintiffs' Channels, knowing or having reason to know that they were obtained through interception.

11                                   PLAINTIFFS' COMPLAINT

45.     Zihong authorized, directed, and participated in Strongtimes' violations of 18 U.S.C. §§ 2511(1)(c), (d), and 2520. Zihong is the sole founder, owner, and director of Strongtimes, and receives direct financial benefits from its violations of 18 U.S.C. §§ 2511(1)(c), (d), and 2520. Zihong is a guiding spirit and central figure in Strongtimes violations of 18 U.S.C. §§ 2511(1)(c), (d), and 2520 and therefore Zihong is personally liable for such violations.

46.     The actions of Strongtimes and Zihong violated 18 U.S.C. §§ 2511(1)(c), (d), and 2520 for tortious and illegal purposes, or for commercial advantage or private financial gain.

47.     Defendants' violations of 18 U.S.C. §§ 2511(1)(c), (d), and 2520 were intentional, and therefore illegal and prohibited. Such violations have damaged Plaintiffs in an amount to be proven at trial. Unless restrained and enjoined, Strongtimes and Zihong will continue to violate 18 U.S.C. §§ 2511(1)(c), (d), and 2520.

## PRAYER FOR RELIEF

Plaintiffs request a judgment against Defendants as follows:

A.     For a permanent injunction, as authorized by Fed. R. Civ. P. 65, 17 U.S.C. § 1203(b)(1), and 18 U.S.C. § 2520(b)(2), that prohibits Defendants, and any officer, agent, servant, employee, or other person acting in active concert or participation with them that receives actual notice of the order, from:

1.     manufacturing, offering to the public, providing, or otherwise trafficking in the Services, Tanggula set-top boxes, or any other technology, product, service, device, component, or part thereof that:

a.     is primarily designed or produced for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

b.     has at best only limited commercially significant purpose or use other than circumventing any DRM technology or other

PLAINTIFFS' COMPLAINT

technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work; or

        c.    is marketed for circumventing any DRM technology or other technological measure that Plaintiffs use to control access to or protect against copying of a copyrighted work;

        2.    intentionally disclosing, endeavoring to disclose, using, or endeavoring to use Plaintiffs' Channels knowing or having reason to know that they were obtained through interception.

B.    For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count I and Count II, or (2) statutory damages up to $2,500 for each violation identified in Count I or Court II, pursuant to 17 U.S.C. § 1203(c)(2) and (c)(3)(A);

C.    For an order awarding the greater of: (1) Plaintiffs' actual damages together with Defendants' profits that are attributable to the violations identified in Count III, or (2) statutory damages of whichever is the greater of $100 per day for each day of violation or $10,000, pursuant to 18 U.S.C. § 2520(c)(2);

D.    For an order awarding Plaintiffs punitive damages pursuant to 18 U.S.C. § 2520(b)(2);

E.    For an order awarding Plaintiffs their attorneys' fees and costs under 17 U.S.C. § 1203(b)(4)-(5) and 18 U.S.C. § 2520(b)(3);

F.    For an order permanently transferring each domain name that Defendants used in connection with the violations to Plaintiffs;

For an accounting of all profits and other benefits that Defendants received from the wrongful conduct identified in this complaint;

G.    For pre and post-judgment interest on all damages awarded by the Court, from the earliest date permitted by law at the maximum rate permitted by law; and

H.    For such additional relief as the Court deems just and equitable.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: June 25, 2025

Respectfully submitted,

By: /s/ David A. Van Riper
   David A. Van Riper (California Bar No. 128059)
   dave@vanriperlaw.com
   **VAN RIPER LAW**
   1254 Irvine Blvd., Suite 200
   Tustin, California 92780-3571
   Telephone: (714) 731-1800
   Facsimile: (714) 731-1811

   Stephen M. Ferguson (*pro hac vice* to be filed)
   stephen.ferguson@hnbllc.com
   **HAGAN NOLL & BOYLE LLC**
   820 Gessner, Suite 940
   Houston, Texas 77024
   Telephone: (713) 343-0478
   Facsimile: (713) 758-0146

   Attorneys for Plaintiffs DISH Network L.L.C. and
   Sling TV L.L.C.

14                                      **PLAINTIFFS' COMPLAINT**